IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAYMARKET DUPAGE LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No: 22-CV-160 |
| Village of Itasca, Itasca Plan Commission, Itasca Fire Protection District No. 1, Itasca Itasca Mayor Jeffrey Pruyn in his official capacity, Itasca Public School District 10, and Itasca Public School District 10 Superintendent Craig Benes in his official capacity, | ) |
| Defendants. | ) |

**ITASCA FIRE PROTECTION DISTRICT NO. 1'S
MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)**

NOW COMES the Defendant, the Itasca Fire Protection District No. 1, and hereby moves to dismiss Plaintiff Haymarket DuPage LLC's Complaint (Dkt. #1) pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). In support thereof, the District states as follows:

**I.      INTRODUCTION**

Distilled to its essence, Plaintiff Haymarket DuPage LLC's 84-page Complaint inappropriately accuses the Itasca Fire Protection District No. 1 of discrimination because it participated in zoning proceedings held by the Village of Itasca. But in reality, the Complaint states no claim against the District and should be dismissed for five independent reasons. First, Haymarket's alleged injury (denial of its zoning applications and accommodation requests) could only have been caused by the Village of Itasca—not the District. As a result, Haymarket has no Fair Housing Act ("FHA") or Americans with Disabilities Act ("ADA") disparate treatment or failure to accommodate claims against the District. Second, and relatedly, Haymarket lacks standing because its alleged injuries are not fairly traceable to the District. Third, Haymarket cannot prevail

1

under FHA Section 3617 because participation in public zoning hearings is not prohibited interference, coercion, or intimidation under the Act. Fourth, Haymarket's FHA Section 3604(c) claim fails because the District is not in the business of renting or selling dwellings, as is required for liability to attach. Fifth, and finally, the District is immunized by the *Noerr-Pennington* doctrine. Thus, the Court should dismiss Haymarket's Complaint against the District.

## II. BACKGROUND

Haymarket sought to open a substance abuse and mental healthcare facility in DuPage County, Illinois (Dkt. # 1, ¶ 77). In April 2019, it contracted to buy a five-story Holiday Inn hotel with 168 units in Itasca, Illinois, for this purpose. (Dkt. # 1, ¶ 4, 77). This building would allow Haymarket to provide 240 beds on site: 96 for inpatient treatment and 144 to be used for "recovery home" therapy. (Dkt. # 1, ¶ 79). Opening Haymarket's proposed facility required zoning approval from the Village of Itasca, so Haymarket filed for a special use permit and a variance to waive certain height and yard standards in July 2019. (Dkt. # 1, ¶ 5, 95, 111).

Under the Village of Itasca's Zoning Ordinance,[1] variances and special uses are finally decided by the Village's President and Board of Trustees. ZONING ORD. p. 200, 208; *see also* Dkt. #1, ¶ 155. But first, such applications go before the Village of Itasca Plan Commission (*see* Dkt. # 1, ¶ 93), which is an advisory board that holds public hearings and submits reports to the Village Board. ZONING ORD. p. 199, 201–02, 208–210. After receiving the Plan Commission's feedback, the Village Board makes the final decision on whether to grant a special use or variance. *Id.* at 203–04, 210. The Village Board need not accept the Plan Commission's recommendations. *Id.*

In accordance with the Zoning Ordinance, the Itasca Plan Commission commenced public hearings on Haymarket's applications. (Dkt. # 1, ¶ 134). The Itasca Fire Protection District No. 1

---

[1] Itasca, Illinois, Zoning Ordinance, *available at* http://www.itasca.com/DocumentCenter/View/526/ZoningCode?bidId= (last visited February 17, 2022) (hereinafter "ZONING ORD."). The Court can take judicial notice of the Village of Itasca's Zoning Ordinance. *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977) (the court may take judicial notice of municipal ordinances on motion to dismiss).

2

was one of many participants in the Plan Commission's public hearings. (Dkt. # 1, ¶ 146). The District is a separate unit of local government that provides fire and emergency medical services. (Dkt. # 1, ¶ 25). It only has one ambulance. (Dkt. # 1, ¶ 125, 188).

During the Plan Commission's public hearings, the District offered evidence that Haymarket's proposed project would impact the provision of emergency medical services to its residents. *Id.* Specifically, the District stated that Haymarket's 240-bed treatment facility would result in an increase in EMS calls. (*See* Dkt. # 1, ¶ 150–51). Haymarket offered opposing evidence and other promises to the Plan Commission to ameliorate the District's concerns. (*See, e.g.*, Dkt. # 1, ¶ 147–49). For example, Haymarket stated it would buy the District another ambulance, but refused to cover the cost of staffing it (approximately $1 million per year, according to the District's Fire Chief). (Dkt. # 1, ¶ 147, 151). Haymarket also promised the Village that it would maintain a contract with a private ambulance company and would maintain medically trained staff on site. (Dkt. # 1, ¶ 149).

Haymarket's project was opposed by others during the Plan Commission's proceedings, which spanned two years and 35 public hearings. Among others, the Itasca School District and many citizens of Itasca voiced their objections. (*See* Dkt. # 1, ¶ 163, 172–79).

On September 22, 2021, the Plan Commission recommended that the Village of Itasca's Board of Trustees should deny Haymarket's zoning application. (*See* Dkt. # 1, ¶ 185). The Village Board then held a public hearing on Haymarket's zoning applications on October 26, 2021. (Dkt. # 1, ¶ 203). On November 2, 2021, the Village Board denied Haymarket's applications. (Dkt. # 1, ¶ 204). Haymarket filed suit on January 11, 2022. (Dkt. # 1).

## III. ARGUMENT

Haymarket's Complaint against the District should be dismissed. First, the District cannot be sued under the FHA or the ADA for disparate treatment or failure to accommodate because it has no authority to decide Haymarket's zoning applications or make an accommodation. Second, Haymarket lacks standing. Third, Haymarket cannot make out an FHA Section 3617 retaliation

claim against the District because mere participation in a public zoning hearing is not coercion, intimidation, or intimidation proscribed by the Act. Fourth, Haymarket has no FHA Section 3604(c) claim because the District was not engaged in the sale or rental of dwellings. Fifth, the District is immune under the *Noerr-Pennington* doctrine. Thus, the Court should dismiss Haymarket's claims against the District.

### A. The District Cannot Be Liable for Disparate Treatment or Failure to Accommodate under Section 3604(f) of the FHA or Title II of the ADA

The Court should dismiss Haymarket's FHA Section 3604(f) and ADA Title II discrimination claims against the District. The District had no power to decide Haymarket's zoning applications or grant an accommodation from the *Village of Itasca's* zoning ordinance. Thus, the District could not have caused the discrimination Haymarket complains about, which warrants dismissal.

#### 1. The District Had No Authority to Decide Haymarket's Zoning Applications or Accommodate Haymarket

Haymarket's Section 3604(f) disparate treatment and failure to accommodate claims fail because the District lacked power to decide Haymarket's zoning applications or offer Haymarket an accommodation.

Section 3604(f) makes it illegal to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer" or to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling" because that person has a disability. 42 U.S.C. § 3604(f)(1)–(2). "Discrimination" in this context is defined by the FHA as "a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises" or "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3).

To state a cognizable claim under Section 3604(f), a plaintiff must allege that the "named

4

defendants had the authority and power to effectuate the alleged discriminatory acts." *Flores v. Vill. of Bensenville, IL*, No. 00 C 4905, 2001 WL 1000915, at *7 (N.D. Ill. Aug. 29, 2001) (citing *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 531 (5th Cir. 1996)); *Hemisphere Building Co., Inc. v. Village of Richton Park*, 1996 WL 721132 (N.D. Ill. 1996)). Indeed, to make a dwelling "unavailable," a defendant "must first have the authority and power to do so." *Meadowbriar*, 81 F.3d at 531. In other words, "the official must be in a position to directly effectuate the alleged discrimination." *Id.*

Here, the District had no power to decide Haymarket's zoning applications—only the Village of Itasca did. ZONING ORD., p. 203–04, 210. Tellingly, the Complaint does not allege otherwise. (*See, e.g.*, Dkt. #1, ¶ 204 ("On November 2, 2021, *the Village Board* . . . denied the Haymarket proposal." (emphasis added)). Therefore, the District cannot be held liable under a Section 3604(f) disparate treatment theory. *See Manzke v. Jefferson Cty.*, No. 19-CV-433-BBC, 2019 WL 6037379, at *2 (W.D. Wis. Nov. 14, 2019) (dismissing a Section 3604 claim against a local government that had no authority to make decisions under a neighboring government's zoning ordinance); *Hemisphere Building Co., Inc.*, 1996 WL 721132 at *4 ("The alleged discriminatory decision here is the denial of the zoning petition, which only the Village Board had the authority to do; the remaining individual defendants were not in a position to 'otherwise make unavailable or deny' housing to Plaintiffs as required by 42 U.S.C. § 3604(f)(1)."); *see also Joubert v. Hussain*, No. CV 118-147, 2020 WL 12676384, at *5 (S.D. Ga. Sept. 8, 2020) ("Individual Defendants, as residents objecting to the rezoning at a public hearing – even if done for discriminatory purposes – possessed no authority or power to make the dwelling unavailable.").

Haymarket's failure to accommodate claim fails for the same reason—the District had no power to grant an accommodation under the *Village of Itasca*'s zoning ordinance. ZONING ORD., p. 203–04, 210. Nor does the Complaint allege the District could do so. Thus, Haymarket cannot hold the District liable under a Section 3604 failure to accommodate theory either. *See Manzke*,

5

2019 WL 6037379, at *2; *Saavedra v. Bd. of Regents of Univ. of Wisconsin Sys.*, 982 F. Supp. 2d 879, 884 (E.D. Wis. 2013) (dismissing Section 504 of the Rehabilitation Act[2] claim where the defendants had no power to grant an accommodation); *see also Sheets v. Villas*, No. 8:15-CV-1674-T-30JSS, 2016 WL 6093224, at *3 (M.D. Fla. Oct. 19, 2016); *Garcia v. Brockway*, No. CV 03-193-S-MHW, 2004 WL 7334542, at *9 (D. Idaho Apr. 22, 2004) (dismissing FHA failure to accommodate claim against former owner of at-issue property because they were not "legally capable to affirmatively respond to Plaintiff's requests.").

More fundamentally, the Complaint never establishes that Haymarket requested an accommodation *of the District* in the first place. One of the basic elements of a failure to accommodate claim is that "the *requested* accommodation must be reasonable." *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006) (emphasis added). Quite clearly, an accommodation must first be requested to trigger liability under Section 3604(f). *See id.* But here, the only accommodations Haymarket alleges it sought were *from the Village*— not the District. (*See, e.g.*, Dkt. #1, ¶ 8 ("Haymarket DuPage requested that *Itasca Defendants* modify this zoning classification as a reasonable accommodation under civil rights laws, they refused." (emphasis added); *id.* at ¶ 104 ("On June 30, 2020, pursuant to the FHA, Haymarket DuPage sent a reasonable accommodation request letter *to Itasca* that asked Itasca to classify Haymarket's use of the Property as a special use for a healthcare facility instead of as a planned development." (emphasis added); *id.* at ¶ 213 ("*the Itasca Defendants* refused reasonably to accommodate Haymarket DuPage." (emphasis added)). Because Haymarket never requested the District make an accommodation, it cannot now accuse the District of violating Section 3604(f).

Ultimately, Haymarket cannot make out any Section 3604(f) claim against the District. The Complaint neither states a disparate treatment nor a failure to accommodate claim. As a result,

---

[2] Section 504 of the Rehabilitation Act and the FHA also share an identical analysis. *Nikolich v. Vill. of Arlington Heights, Ill.*, 870 F. Supp. 2d 556, 562 (N.D. Ill. 2012).

Haymarket's Complaint should be dismissed.

### 2. Haymarket's ADA Title II Claim Is Duplicative

Section 3604(f) of the FHA and Title II of the ADA share an identical analysis. *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 967 (7th Cir. 2018). Because Haymarket cannot establish a claim under Section 3604(f), its ADA action is similarly doomed. Therefore, the Court should dismiss Haymarket's ADA claims as well.

### B. Haymarket Lacks Standing

The Complaint is also mislaid because Haymarket lacks standing. "All plaintiffs, including organizations, seeking to invoke federal jurisdiction must have standing." *Freedom from Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008). Under Rule 12(b)(1),[3] a court must dismiss a claim if the plaintiff lacks standing. *See Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998). "As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). To meet the minimum standing requirements of Article III, Haymarket must prove three elements: (1) it suffered a concrete and particularized injury that is actual or imminent; (2) the injury is fairly traceable to the District's action; and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Haymarket lacks standing because there is no causal nexus between its alleged injuries (*i.e.*, denial of its zoning applications and accommodation requests) and the District. To meet the causation requirement for standing, Haymarket and must show that its injury is fairly traceable to action taken by the District. *H.O.P.E., Inc. v. Eden Mgmt. LLC*, 128 F. Supp. 3d 1066, 1073–74 (N.D. Ill. 2015). But Haymarket cannot meet this standard. Nowhere does Haymarket allege that *the District* denied its zoning applications or refused to make a reasonable accommodation from *its* services. Rather, as stated above, only the Village of Itasca was able to inflict those harms.

---

[3] While the District's standing arguments are brought under Rule 12(b)(1), the remainder proceed pursuant to Rule 12(b)(6).

*See* Section III(A) *supra.* Accordingly, Haymarket lacks standing and its complaint should be dismissed pursuant to Rule 12(b)(1). *See H.O.P.E., Inc.*, 128 F. Supp. 3d at 1074–79.

C.  **Haymarket Cannot State an FHA Section 3617 Retaliation Claim**

The Court should also dismiss Haymarket's FHA Section 3617 retaliation claim against the District because voicing one's opinion in a public zoning hearing is not coercion, intimidation, or interference within the meaning of the Act.

Section 3617 makes it illegal to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606" of the FHA. *Bloch v. Frischholz*, 587 F.3d 771, 781 (7th Cir. 2009). "Most litigation based on Section 3617 centers on direct, extralegal acts of interference or retaliation for the exercise of FHA rights." *Davis v. Fenton*, No. 13 C 3224, 2016 WL 1529899, at *7 (N.D. Ill. Apr. 13, 2016), *aff'd*, 857 F.3d 961 (7th Cir. 2017). "Illustrative cases have involved acts such as cross-burning, firebombing homes or cars, shooting shotguns, physical assaults, or throwing Molotov cocktails." *Whisby-Myers v. Kiekenapp*, 293 F. Supp. 2d 845, 852 (N.D. Ill. 2003).

Haymarket wrongly implies that the District coerced, intimidated, or interfered with it by disagreeing with its positions during the Village of Itasca's zoning proceedings. (Dkt. #1, ¶ 226). Yet, seeking legal redress is not interference under Section 3617. *Davis*, 2016 WL 1529899, at *7; *see also Davis v. Fenton*, 857 F.3d 961, 963 (7th Cir. 2017). Even discriminatory comments made during and after a zoning hearing "do[] not amount to interference, much less coercive, intimidating, or threatening behavior" under Section 3617. *Joubert*, 2020 WL 12676384, at *5 (citing *Hous. Inv'rs, Inc. v. City of Clanton*, 68 F. Supp. 2d 1287, 1300-01 (M.D. Ala. Oct. 14, 1999)); *see also Chicago Title & Land Tr. Co. v. Rabin*, No. 11-CV-425, 2012 WL 266387, at *3 (N.D. Ill. Jan. 30, 2012) (dismissing Section 3617 complaint where "Defendants made offensive comments and waived a finger angrily at him at the Zoning Board meeting" and there were no

allegations "of any legitimately threatening or violent actions that any Defendant actually took in effort prevent him from building a house."). Therefore, the Court should dismiss Haymarket's Section 3617 claim. *Accord Joubert*, 2020 WL 12676384, at *5.

### D. Haymarket Cannot Present an FHA Section 3604(c) Claim

The District also cannot be liable under FHA Section 3604(c). This provision "is clearly intended to prohibit efforts to indicate impermissible preferences that might prospectively dissuade protected persons from pursuing an opportunity to rent or purchase a particular dwelling." *Walker v. McCoy*, No. 10-C-192, 2012 WL 1191470, at *4 (E.D. Wis. Apr. 10, 2012). To state a claim under Section 3604(c), Haymarket must plead: (1) the District made a statement; (2) the statement was made with respect to the sale or rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination against the plaintiffs on the basis of their status within a protected group. *White v. U.S. Dept. of Hous. and Dev.*, 475 F.3d 898, 904 (7th Cir. 2007). Though oral discriminatory statements can count, they must still be "made in connection with the sale or rental of a dwelling." *Id.* (citing 24 C.F.R. § 100.75(b)).

At minimum, Haymarket's Section 3604(c) claim falters because the District was not engaged in the business of selling or renting dwellings. *See Davis v. Fenton*, 26 F. Supp. 3d 727, 741 (N.D. Ill. 2014); *see also* 24 C.F.R. § 100.75(b) ("The prohibitions of [§ 3604(c)] shall apply to all written or oral notices or statements by a person *engaged in the sale or rental of a dwelling*." (emphasis added)). The District is a unit of local government that provides fire suppression and emergency medical services. (Dkt. # 1, ¶ 25). It has no statutory authority to be in the business of selling or renting homes. *See generally* 70 ILCS 705/1 *et seq.*; *see also ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012) (holding fire protection districts only possess powers provided by statutes). Thus, Haymarket cannot state a Section 3604(c) claim against the District. *See Davis*, 26 F. Supp. 3d at 741 ("Because Defendants were not engaged in the business of selling or renting homes, Plaintiff's claim under section 3604(c) is also misguided.").

But even if the District were (somehow) in the real estate business, the Complaint would still be deficient because it does not allege that any statement by the District was made in connection with the *sale* or *rental* of Haymarket's property. *See Small v. The Anchorage Homeowners Ass'n, LLC*, No. 118CV01605TABSEB, 2019 WL 1317636, at *5 (S.D. Ind. Mar. 21, 2019). Indeed, there is no allegation that the zoning proceedings in which the District participated had anything to do with Haymarket's purchase of the former Holiday Inn—at most, they dealt with how the property could be used afterwards.

For these reasons, Haymarket's Section 3604(c) claim should be dismissed.

### E.     The *Noerr-Pennington* Doctrine Immunizes the District

Even assuming Haymarket could state a valid claim, the District would nevertheless enjoy total immunity under the *Noerr-Pennington* doctrine. Originating in the antitrust context, the *Noerr-Pennington* doctrine shields parties from liability based on lobbying efforts and public statements. *Mercatus Grp. LLC v. Lake Forest Hosp.*, 695 F. Supp. 2d 811, 818 (N.D. Ill. 2010), *aff'd*, 641 F.3d 834 (7th Cir. 2011). The doctrine block suits under the Fair Housing Act arising out of allegedly biased lobbying by local governments. *New W., L.P*., 491 F.3d at 722 (collecting cases); *see also Tri-Corp Hous. Inc. v. Bauman*, 826 F.3d 446, 450 (7th Cir. 2016) (applying the doctrine where "officials of one governmental body tried to persuade officials of a different public body to act in a particular way."); *Sheikh v. Rabin*, 565 F. App'x 512, 517 (7th Cir. 2014). Moreover, immunity under *Noerr–Pennington* applies "regardless of intent or purpose." *United Mine Workers v. Pennington*, 381 U.S. 657, 670 (1965); *New W., L.P.*, 491 F.3d at 722 (holding the doctrine applies even where the defendant municipality allegedly "lied to HUD and its own populace" because "lobbying is protected whether or not the lobbyist used deceit.").

The gravamen of Haymarket's Complaint is that the District offered unfavorable evidence during the Village of Itasca's zoning proceedings. (Dkt. #1, ¶ 146–61). However, the District had the right under the First Amendment to speak its mind during the Village of Itasca's public hearings. *New W., L.P.*, 491 F.3d at 722. The District is thus immune under *Noerr-Pennington*

from all of Haymarket's claims. *See Mercatus Grp. LLC v. Lake Forest Hosp.*, 641 F.3d 834, 849 (7th Cir. 2011) (holding hospital was immunized by the doctrine where it lobbied against competitor's project in identical zoning proceedings).

## IV. CONCLUSION

Haymarket's Complaint states no claim against the District. Haymarket cannot colorably allege that *the District* denied its zoning applications or failed to make a reasonable accommodation—those harms could only have been caused by the Village of Itasca. Therefore, Haymarket has no FHA or ADA disparate treatment or failure to accommodate claims against the District. For similar reasons, Haymarket lacks standing to sue the District. Haymarket's FHA Section 3617 retaliation theory fares no better because participation in public zoning hearings is not interference, coercion, or intimidation within the meaning of the Act. Further, Haymarket's FHA Section 3604(c) claim cannot proceed against the District, which is not in the business of renting or selling dwellings. Finally, the District is immunized by the *Noerr-Pennington* doctrine. Thus, the Court should dismiss Haymarket's Complaint against the District.

WHEREFORE, for the reasons stated above, the Itasca Fire Protection District No. 1 prays that the Court enter an order dismissing Haymarket's claims against it, and granting any other relief the Court deems necessary and just.

Respectfully Submitted,

**OTTOSEN DINOLFO HASENBALG & CASTALDO, LTD.**

*/s/ Stephen H. DiNolfo*

One of Its Attorneys

Stephen H. DiNolfo (ARDC # 6206823)
John E. Motylinski (ARDC # 6321177)
OTTOSEN DINOLFO HASENBLAG & CASTALDO, LTD.
1804 N. Naper Blvd; Suite 350
Naperville, Illinois 60563
630-682-0085
sdinolfo@ottosenlaw.com