IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAYMARKET DUPAGE LLC, | ) |
|     Plaintiff, | ) ) ) |
|     v. | ) ) Case No: 22-CV-160 |
| Village of Itasca, Itasca Plan Commission, Itasca Fire Protection District No. 1, Itasca Itasca Mayor Jeffrey Pruyn in his official capacity, Itasca Public School District 10, and Itasca Public School District 10 Superintendent Craig Benes in his official capacity, | ) ) ) ) ) ) ) ) ) |
|     Defendants. | ) |

**ITASCA FIRE PROTECTION DISTRICT NO. 1'S
REPLY IN FAVOR OF ITS MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(1) and 12(b)(6)**

NOW COMES the Defendant, the Itasca Fire Protection District No. 1 (the "District"), and, for its Reply in Favor of its Motion to Dismiss Plaintiff Haymarket DuPage LLC's Complaint (Dkt. #1) pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), states as follows:

**I.     INTRODUCTION**

Plaintiff Haymarket DuPage LLC's Response does little to avoid dismissal of its Complaint. Contrary to Haymarket's assertions, the sham exception to the *Noerr-Pennington* doctrine does not apply. Nor can Haymarket rely on a "concerted activity" theory to establish liability under Section 3604(f). Indeed, Haymarket's Complaint does not allege any facts that bring that oft-applied label of "concerted activity" to any level of plausibility. Thus, Haymarket cannot impute the Village's allegedly discriminatory act (*i.e.*, denial of its zoning applications) to the District. Without that, Haymarket's remaining complaints fall far short of a Section 3604(f) claim. Moreover, Haymarket's defense of its Section 3604(c) and 3617 claims rings hollow. A Section 3617 claim cannot be premised on legal participation in a zoning hearing, and a defendant in the

1

Seventh Circuit must be in the business of renting or selling a dwelling for a Section 3604(c) claim to attach. Finally, Haymarket plainly lacks standing because (1) the District did not cause the harm of "discriminatory denial of zoning," and (2) there is no way for that harm to be redressed via the District. For these reasons, the Court should dismiss Haymarket's claims against the District.

## II.     ARGUMENT

### A.     The *Noerr-Pennington* Doctrine Immunizes the District and the Sham Exception Does Not Apply

Haymarket's Response confirms the District is entitled to immunity under the *Noerr-Pennington* doctrine. Quite clearly, Haymarket is attempting to saddle the District with liability because the District offered opinions in the Village of Itasca's zoning proceedings that did not align with its own. This is a textbook case for the *Noerr-Pennington* doctrine, and the sham exception does not apply.

Haymarket is wrong that the District's opposition to its zoning application was a "sham."[1] There are two recognized exceptions to the *Noerr-Pennington* doctrine: fraudulent misrepresentations and sham lawsuits. *U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chicago, Inc.*, 953 F.3d 955, 960 (7th Cir. 2020). Haymarket does not say which exception it relies on, but neither apply here.

#### 1.    The "Sham Lawsuits" Exception Does Not Apply

The sham lawsuits exception "is extraordinarily narrow." *Id.* at 963. It "holds liable objectively baseless lawsuits brought in an attempt to interfere *directly* with the business relationships of a competitor through the use of the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon." *Id.* Put another way, "[b]aseless,

---

[1] Haymarket oversimplifies the sham exception by citing to *Tri-Corp Housing Incorporated v. Bauman*'s limited statements about the sham exception. 826 F.3d 446, 450 (7th 2016). The Seventh Circuit has since expounded on its sham exception jurisprudence in *U.S. Futures Exch., L.L.C. v. Bd. of Trade of the City of Chicago, Inc.*, 953 F.3d 955, 960 (7th Cir. 2020).

frivolous efforts, as distinct from colorable suits brought in bad faith, receive no protection" under the *Noerr-Pennington* doctrine. *Id.* The sham lawsuits exception thus requires a two-step inquiry: "(1) only if challenged litigation is objectively meritless may a court (2) examine the litigant's subjective motivation." *Id.*

As a threshold matter, the sham lawsuits exception does not apply to this case in the first instance because the Village's zoning proceedings were *legislative* in nature. *Mercatus Grp. LLC v. Lake Forest Hosp.*, 641 F.3d 834, 821 (7th Cir. 2011) (holding zoning proceedings identical to the ones at bar were legislative activities); *see also Sheikh v. Rabin*, 565 F. App'x 512, 516–17 (7th Cir. 2014). Indeed, "shams" are usually only found in the adjudicative settings, as it is "virtually impossible" to prove sham petitioning in a legislative context. *U.S. Futures*, 953 F.3d at 963, 966. Thus, Haymarket cannot invoke the "sham lawsuits" exception here in the first place.

Even if it applied, the sham lawsuits exception still would not aid Haymarket. The zoning proceedings themselves were not frivolous or baseless. Notably, Haymarket—not the District—initiated them to obtain a special use permit and a variance to waive height and yard standards. (Dkt. # 1, ¶ 5, 95, 111). Nor was the District's participation in the zoning proceedings objectively baseless. Haymarket's Complaint acknowledges, as it must, that its proposed 240-bed recovery facility would inevitably cause an impact on EMS services, although the parties differed on how much. (Dkt. # 1, ¶ 79, 146–48). As a result, Haymarket cannot maintain that the District's presence in the zoning proceedings was entirely unwarranted. If it were, then Haymarket would not have offered to buy the Village another ambulance or maintain a contract with a private ambulance company. (Dkt. # 1, ¶ 120, 147, 149, 151). And most significantly, the Village Board ultimately denied Haymarket's application. (Dkt. # 1, ¶ 204). This is dispositive because "a successful, winning petition proves its own reasonableness and certainly cannot be characterized as a sham." *U.S. Futures*, 953 F.3d at 963 (cleaned up). Thus, the sham lawsuits exception to *Noerr-Pennington* does not apply here.

*2. The Fraudulent Misrepresentation Exception Does Not Apply*

Nor does the fraudulent misrepresentation exception aid Haymarket. This exception applies only in the adjudicative context; misrepresentations made in a legislative context enjoy total immunity. *Id.* at 960; *Mercatus Grp.*, 641 F.3d at 849 ("the fraud exception does not apply to legislative proceedings . . . ."); *New W., L.P.*, 491 F.3d at 722 ("lobbying is protected whether or not the lobbyist used deceit."). However, Haymarket does not dispute that Village's zoning application process is legislative in nature. *See also Mercatus Grp., LLC.* 641 F.3d at 821 (the Village of Lake Bluff's identical zoning proceedings were legislative); *Sheikh*, 565 F. App'x at 516–17.[2] Thus, this arm of the sham exception does not apply either.

Because no exception to *Noerr-Pennington* applies, the Court should find the District is immunized and dismiss the claims against it.

**B.  The District Is Not Liable under Section 3604(f) of the FHA or Title II of the ADA**

Since the *Noerr-Pennington* doctrine offers full immunity to the District, the Court need not consider the substance of Haymarket's claims. However, those also fail on the merits for the reasons stated below.

*1. Haymarket's "Concerted Activity" Assertions Are Unsupported and Implausible*

It should not escape the Court's attention that Haymarket does not dispute that: (1) the alleged discrimination here was the denial of its zoning applications (Dkt. # 39, p. 6), and (2) the District did not have the power to decide Haymarket's zoning applications. That alone is fatal to its assorted FHA and ADA claims. *Flores v. Vill. of Bensenville, IL*, No. 00 C 4905, 2001 WL

---

[2] *Compare* Itasca, Illinois, Zoning Ordinance, p. 199, 201–02, 208–210, *available at* http://www.itasca.com/DocumentCenter/View/526/ZoningCode?bidId= (last visited May 6, 2022) (hereinafter "ZONING ORD."), *with* Lake Bluff, Illinois Municipal Code § 10-2-4, *available at* https://codelibrary.amlegal.com/codes/lakebluffil (last visited May 6, 2022) (both holding that (1) special use and variance proceedings are subject to approval by the Village Board; (2) Plan Commission hearings are to be held prior to approval of an application; (3) the Plan Commission is an advisory board).

4

1000915, at *7 (N.D. Ill. Aug. 29, 2001).

Attempting to sidestep this conclusion, Haymarket hypothesizes that the District can be liable under a "concerted activity" theory. In support, it points to the many conclusory statements in its Complaint about the Defendants working together to deny Haymarket's zoning applications. That is insufficient.

A pleading must offer more than mere labels and conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In fact, a complaint will not suffice if it tenders naked assertions devoid of further factual enhancements. *Id.* Therefore, many courts have dismissed complaints that make naked "concerted activity" conclusions that are not supported by factual allegations. *See, e.g.*, *Sheikh v. Wheeler*, 790 F. App'x 793, 796 (7th Cir. 2019) ("Sheikh contends that he pleaded that the defendants acted in concert and performed their 'assigned' roles. Those allegations were conclusory, however, and do not allow a plausible inference that the defendants worked together for the same unlawful purpose."); *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (In the Section 1983 context, "mere allegations of joint action or a conspiracy do not demonstrate that the defendants acted under color of state law and are not sufficient to survive a motion to dismiss."); *Pinkett v. First Citizens Bank*, No. 09 C 2365, 2010 WL 1910520, at *6 (N.D. Ill. May 10, 2010) ("Pinkett has invoked only a conclusory allegation that First Citizens and Norwest Capital 'acted in concert,' that fails to raise his right to relief above the speculative level.").

The Court should similarly find that Haymarket's threadbare "concerted activity" recitals are insufficient. Critically, Haymarket's label of "concerted activity" is not supported by any substantive factual allegations. (*See, e.g.*, Dkt. # 1, ¶ 1, 11, 225); *see also Iqbal*, 556 U.S. at 686 (courts are not required to "credit a complaint's conclusory allegations without reference to its factual context"). At bottom, Haymarket begs the Court to *assume* there was a discriminatory conspiracy because there was common opposition to its zoning application. However, as this Court has already concluded, that is not enough.

In *Sheikh v. Rabin*, this Court granted a motion to dismiss under similar circumstances.

5

No. 11-CV-425, 2012 WL 5471085, at *1 (N.D. Ill. Nov. 9, 2012), *aff'd*, 565 F. App'x 512 (7th Cir. 2014). There, the plaintiff wanted to build a house and sought zoning variances and approvals with a zoning board. *Id.* at *1–2. However, his plans were opposed by neighbors. *Id.* The neighbors allegedly made knowingly false claims about his property to the zoning board. *Id.* at *2. The plaintiff, a Muslim from South Asia, filed suit against his neighbors for discrimination under the FHA. *Id.* at *2–3. This Court found that the plaintiff could not "establish a conspiracy by pointing out that a group of neighbors opposed new, unexpected construction in their neighborhood." *Id.* at *4. That opposition was "not surprising," and the Court noted it did not "need to insert a supposition of discrimination to explain it." *Id.* As such, the Court concluded that:

> Plaintiff has not stated a claim against any individual defendant, and he cannot draw on the neighbors' common opposition to his plans as evidence of a racist conspiracy. There is a difference between saying, effectively— or, in this case, literally—"not in my back yard," and opposing someone's plans to build a house because of their national origin.

*Id.* at *5.

*Sheikh*'s lesson is directly applicable here.[3] Haymarket has not alleged any facts supporting its theory that a discriminatory conspiracy is to blame for the Village of Itasca's decision on its zoning application. So, just as in *Sheikh*, the Court should not accept Haymarket's invitation to "insert of supposition of discrimination to explain it"; Haymarket's assertions of "concerted activity" simply cannot be justified by common opposition to its zoning applications. *Id.* at *4.

Ultimately, Haymarket's conspiracy theory is implausible as pleaded. Without any support for the conclusion that the parties acted in concert, that label does not carry the day. Accordingly, the Court should dismiss Haymarket's claims against the District.

---

[3] In affirming the Court's judgment, the Seventh Circuit also applied the *Noerr-Pennington* doctrine and found that the defendants' actions (*i.e.*, voicing opposition to the variances the plaintiff wanted from the city council and the zoning board) were immunized and the sham exception did not apply. *Sheikh*, 565 F. App'x. at 517.

> 2. *The District Cannot Be Held Liable for Disparate Treatment Under FHA Section 3604(f)*

With the Village's conduct severed from the District, Haymarket cannot avoid dismissal of its FHA Section 3604(f) disparate treatment claim. Again, the named defendants must have "had the authority and power to effectuate the alleged discriminatory acts." *Flores v. Vill. of Bensenville, IL*, No. 00 C 4905, 2001 WL 1000915, at *7 (N.D. Ill. Aug. 29, 2001). Plainly, the District lacked power to decide Haymarket's zoning applications. That could only be done by the Village of Itasca, which was considering the applications. ZONING ORD., p. 203–04, 210; (*see also* Dkt. #1, ¶ 204 ("On November 2, 2021, *the Village Board* . . . denied the Haymarket proposal." (emphasis added)). Therefore, the District cannot be held liable under Section 3604(f).

Pivoting, Haymarket inaccurately posits that the District is liable under Section 3604(f) due to "failure to provide governmental services." (Dkt. # 39, p. 13). However, Haymarket forgets that this conduct is only actionable where the government fails to provide *its* services. Stunningly, all of the cases Haymarket cites stand for this proposition. *See, e.g.*, *Campbell v. City of Berwyn*, 815 F. Supp. 1138 (N.D. Ill 1993) (plaintiffs stated a claim against a city that terminated *its* police protection due to race); *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 135 S. Ct. 2507 (2015) (plaintiffs stated a claim against Texas Department of Housing and Community Affairs because *its* allocation of low-income housing tax credits resulted in a disparate impact); *Mehta v. Vill. of Bolingbrook*, 196 F. Supp. 3d 855, 867 (N.D. Ill. 2016) (denying summary judgment on Section 3617 claim against a village where *its* police officers were actively working to uproot the plaintiffs).

Here, though, there are no allegations that the District made *its* services unavailable to Haymarket for discriminatory reasons. The District provides fire, rescue, and emergency medical services. It is incapable of deciding the Village of Itasca's zoning applications. That alone dooms Haymarket's claim. *Flores*, 2001 WL 1000915, at *7.

Haymarket's remaining contentions are meritless. Despite Haymarket's stray comment to

the contrary, there is no allegation in the Complaint that the District refused to provide emergency services to Haymarket. (Dkt. # 39, p. 13–14). Nor does Haymarket's "aggressive fire code enforcement" allegation suffice. According to the Complaint, that transaction occurred on May 28, 2019—well before the zoning proceedings that form the basis of the Complaint. (Dkt. #1, ¶ 126, 140). It is also distinct from Haymarket's alleged injury: discriminatory denial of its zoning applications. (Dkt. #39, p. 6). Thus, Haymarket cannot base an FHA claim based on "threats of aggressive fire code enforcement" because the applicable 2-year statute of limitations passed before it filed suit. 42 U.S.C. 3613(a)(1)(A); *Lyons v. Gene B. Glick Co., Inc.*, 844 F. App'x 866, 869 (7th Cir. 2021); *Nat'l Fair Hous. All. v. Deutsche Bank*, No. 18 C 0839, 2018 WL 6045216, at *3 (N.D. Ill. Nov. 19, 2018); (Dkt. #1, ¶ 126, 140).

With nothing left to base its disparate treatment claim on, Haymarket's Section 3604(f) claim falls.

> 3. *The District Cannot Be Held Liable for Failure to Accommodate Haymarket Under FHA Section 3604(f)*

Haymarket's attempt to justify its failure to accommodate claim is also mislaid. Haymarket incorrectly theorizes that merely refusing to sidebar with it during a zoning process constitutes a violation of the Fair Housing Act. Not so.

Reasonable accommodations under the FHA must be (1) reasonable, and (2) necessary. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 748–49 (7th Cir. 2006). Haymarket's newly cited proposed accommodation does not meet either requirement. It certainly would not be reasonable to require the District to "reach[] an agreement with Haymarket" (*i.e.*, capitulate and accept Haymarket's opinion) about the impact its facility would have on emergency medical services District-wide. Tellingly, Haymarket cites no caselaw indicating that a *participant* in a zoning proceeding must assist the petitioner in securing approval of special use permits and variances. Thus, Haymarket's newly proposed "accommodation" is not reasonable.

More fundamentally, Haymarket's accommodation is also not necessary. The "necessary"

8

requirement is a causation inquiry. *Id.* at 749. "If the proposed accommodation provides no *direct* amelioration of a disability's effect, it cannot be said to be necessary." *Id.* (quoting *Lapid–Laurel, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 460 (3d Cir. 2002) (emphasis added)).

Here, meeting with Haymarket would not have had any *direct* effect on Haymarket's zoning applications. Only the Village could have made a "direct effect" on its zoning requirements. Haymarket admits as much by alleging it sought such an accommodation from the Village. (*See, e.g.*, Dkt. #1, ¶ 8 ("Haymarket DuPage requested that *Itasca Defendants* modify this zoning classification as a reasonable accommodation under civil rights laws, they refused." (emphasis added); *id.* at ¶ 104 ("On June 30, 2020, pursuant to the FHA, Haymarket DuPage sent a reasonable accommodation request letter *to Itasca* that asked Itasca to classify Haymarket's use of the Property as a special use for a healthcare facility instead of as a planned development." (emphasis added)).

For these reasons, Haymarket has no FHA Section 3604(f) claim against the District, and Haymarket's Complaint should be dismissed.

### C. Haymarket Cannot State an FHA Section 3617 Retaliation Claim

Contrary to Haymarket's arguments, it has not properly pleaded an FHA Section 3617 retaliation claim against the District either.

Strikingly, Haymarket does not dispute that seeking legal redress does not qualify as impermissible interference under Section 3617. In fact, Haymarket makes no attempt to distinguish any of the District's cited caselaw confirming this proposition. *Joubert*, 2020 WL 12676384, at *5; *Davis*, 2016 WL 1529899, at *7; *Davis v. Fenton*, 857 F.3d 961, 963 (7th Cir. 2017); *Chicago Title & Land Tr. Co. v. Rabin*, No. 11-CV-425, 2012 WL 266387, at *3 (N.D. Ill. Jan. 30, 2012) (dismissing Section 3617 complaint where "Defendants made offensive comments and waived a finger angrily at him at the Zoning Board meeting" and there were no allegations "of any legitimately threatening or violent actions that any Defendant actually took in effort prevent

him from building a house.").

Instead, Haymarket resorts to a single opinion from the District of New Jersey, *Fowler v. Borough of Westville*, 94 F. Supp. 2d 602 (D. N.J. 2000), which is easily distinguishable. As Haymarket reports, the defendants there asserted "no liability can be imposed on a person for violating § 3617 of the FHA unless the threat of force is apparent." *Id.* at 613. Obviously, that is untrue even in the Seventh Circuit. *See, e.g.*, *Hunter v. WPD Mgmt., LLC*, 476 F. Supp. 3d 731, 737 (N.D. Ill. 2020). So, the *Fowler* court rightfully rejected that notion. 94 F. Supp. 2d at 614.

Here, on the other hand, the District sought legal redress by participating in the Village of Itasca's zoning proceedings. Haymarket does not—and cannot—contend that participating in a zoning hearing amounts to interference under Section 3617. *Davis*, 2016 WL 1529899, at *7; *see also Davis v. Fenton*, 857 F.3d 961, 963 (7th Cir. 2017). Therefore, Haymarket cannot prevail on a Section 3617 claim for any conduct related to the Village of Itasca's zoning proceedings. *Id.*

Haymarket also cannot base a standalone Section 3617 claim on its allegation that the District threatened aggressive enforcement of the fire code. Even if this were a cognizable "threat," Haymarket cannot now base a Section 3617 claim on it because it is analytically distinct and the two-year statute of limitations passed in May 2021. 42 U.S.C. 3613(a)(1)(A); *Lyons*, 844 F. App'x at 869; *Nat'l Fair Hous. All.*, 2018 WL 6045216, at *3; (Dkt. #1, ¶ 126, 140). As a result, the Court should dismiss Haymarket's Section 3617 claim.

    **D.**    **Haymarket's Section 3604(c) Claim Also Fails**

Haymarket mounts almost no defense of its Section 3604(c) claim. Conspicuously, nowhere does Haymarket dispute that the District was not—and could not be—engaged in the business of selling or renting dwellings. That alone is decisive. *See Davis v. Fenton*, 26 F. Supp. 3d 727, 741 (N.D. Ill. 2014); *see also* 24 C.F.R. § 100.75(b) ("The prohibitions of [§ 3604(c)] shall apply to all written or oral notices or statements by a person *engaged in the sale or rental of a dwelling*." (emphasis added)).

Haymarket nevertheless invokes foreign caselaw for the proposition that Section 3604(c)

10

"applies on its face to anyone who makes prohibited statements." (Dkt. #. 39, p. 14 (quoting *Gilead Community Services, Inc. v. Town of Cromwell*, 432 F. Supp. 3d 46, 69 (D. Conn. 2019)). But that is not the law in the Seventh Circuit. Unlike the Second Circuit, "the Seventh Circuit has applied [Section 3604(c)] only to situations involving defendants who were engaged in the sale or rental of a dwelling." *Davis v. Fenton*, 26 F. Supp. 3d 727, 741 (N.D. Ill. 2014)[4] (citing *White v. U.S. Dep't of Hous. & Dev.*, 475 F.3d 898, 904 (7th Cir. 2007); *Jancik v. Dep't of Hous. & Urban Dev.*, 44 F.3d 553, 556–57 (7th Cir. 1995)). Consequently, Haymarket's invocation of foreign law is misplaced, and the Court should dismiss Haymarket's Section 3604(c) claim.

Additionally, Haymarket has declined to address the District's argument that, even if the District were somehow engaged in the sale or rental of a dwelling, dismissal would still be appropriate because the Complaint does not allege that any statement by the District was made in connection with the *sale* or *rental* of Haymarket's property. *See Small v. The Anchorage Homeowners Ass'n, LLC*, No. 118CV01605TABSEB, 2019 WL 1317636, at *5 (S.D. Ind. Mar. 21, 2019). The harm Haymarket cites is denial of its amended zoning applications, which happened *after* it bought the at-issue premises.[5] (Dkt. # 39, p. 6). Post-purchase zoning disputes have nothing to do with Haymarket's prior purchase of the premises. For this reason, too, Haymarket's Section 3604(c) claim should be dismissed.

### E. Haymarket Lacks Standing

Despite its assertions to the contrary, Haymarket lacks standing to sue the District for the Village's denial of their zoning applications. In fact, Haymarket has failed to establish two

---

[4] In a footnote, Haymarket contends that *Davis v. Fenton* is distinguishable because "it involves an attorney targeting advertisements to the Black community." (Dkt. # 39, p. 14). That is true, but it is a distinction without a difference. *Davis*' overarching point is that no one–whether it be a lawyer or a unit of local government—can be held liable under Section 3604(c) unless they are "engaged in the sale or rental of a dwelling." *Davis*, 26 F. Supp. 3d at 741.

[5] *See* Amened Petition for Special Use, http://www.itasca.com/DocumentCenter/View/9254/C--August-7-2020-Supplement---Amended-Application-for-a-Special-Use-Permit-as-a-Healthcare-Facility (last visited May 13, 2022). The Court can consider this Application because it is central to Haymarket's claim and the Complaint references it. (Dkt. #1, p. 41 n. 31); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

requirements of Article III standing: (1) that its injury (*i.e.*, denial of its zoning applications) is fairly traceable to the District's actions, and (2) that it is likely that injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

First, as noted above, Haymarket cannot establish that its claimed injury is fairly traceable *to the District*. Haymarket asserts its injury is a "discriminatory denial of zoning." (Dkt. # 39, p. 6). That may be cognizable, but it dooms Haymarket's attempts to sue the District. As a matter of law, the District has no control over how the Village of Itasca decides its zoning applications. ZONING ORD., p. 203–04, 210. Haymarket's Complaint admits as much. (*See, e.g.*, Dkt. #1, ¶ 204 ("On November 2, 2021, *the Village Board* . . . denied the Haymarket proposal." (emphasis added)). Therefore, Haymarket cannot show that its "denial of zoning" was caused by the District's actions, and thus lacks standing.

Second, and relatedly, Haymarket cannot show that it is likely that its zoning injury will be redressed by a favorable decision against the District. Because the District does not control what the Village of Itasca does, Haymarket cannot show a probability that a favorable judgment against the District will result in zoning approval. *See* 13A FED. PRAC. & PROC. JURIS. § 3531.6 (3d ed.) ("a defendant who did not cause the injury often will also not be in a position to accomplish whatever relief the court might order."). Accordingly, Haymarket lacks standing and its complaint should be dismissed pursuant to Rule 12(b)(1).

### III. CONCLUSION

Haymarket's Complaint states no claim against the District, and its response confirms it. The District is immunized by the *Noerr-Pennington* doctrine and the sham exception does not apply. Nor can Haymarket advance its implausible claim that the District and the other Defendants "acted in concert" given the allegations in the Complaint. And because the District was incapable of inflicting the harm Haymarket wants redressed (*i.e.*, discriminatory denial of zoning), Haymarket has no FHA or ADA disparate treatment or failure to accommodate claims against the District. For similar reasons, Haymarket lacks standing to sue the District—Haymarket's injury is

not fairly traceable to the District, and no relief from the District can result in zoning approval. Moreover, Haymarket's FHA Section 3604(c) and 3617 claims are not cognizable. Section 3604(c) does not apply because the District is not in the business of selling or renting a dwelling. And Section 3617 is a poor fit here because participation in zoning proceedings cannot qualify as "interference" under the FHA. For these reasons, the Court should dismiss Haymarket's Complaint against the District.

      WHEREFORE, for the reasons stated above, the Itasca Fire Protection District No. 1 prays that the Court enter an order dismissing Haymarket's claims against it, and granting any other relief the Court deems necessary and just.

Respectfully Submitted,

**OTTOSEN DINOLFO HASENBALG & CASTALDO, LTD.**

*/s/ Stephen H. DiNolfo*

One of Its Attorneys

Stephen H. DiNolfo (ARDC # 6206823)
John E. Motylinski (ARDC # 6321177)
OTTOSEN DINOLFO HASENBLAG & CASTALDO, LTD.
1804 N. Naper Blvd; Suite 350
Naperville, Illinois 60563
630-682-0085
sdinolfo@ottosenlaw.com

13