UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAYMARKET DUPAGE LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> VILLAGE OF ITASCA, et al. ) <br> ) <br> Defendants. ) | Case No.: 22 cv 160 <br><br> Judge Robert M. Dow, Jr. |

ITASCA PUBLIC SCHOOL DISTRICT 10 AND
SUPERINTENDENT CRAIG BENES'S
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
COMPLAINT AGAINST THEM

Defendants Itasca Public School District 10 and Superintendent Craig Benes (collectively "the School District" or "School District Defendants"), by and through their attorneys Engler Callaway Baasten & Sraga, LLC and Franczek P.C., submit this Reply in Support of their Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

**ARGUMENT**

Plaintiff clarifies in its response that its efforts to foist liability on the School District Defendants under the Fair Housing Act and Americans with Disabilities Act turn on an alleged "coordinated scheme" to discriminate. Plaintiff speculates that the School District Defendants' issuance of a press release and parent communication (summarizing the testimony at the zoning hearing) factored explicitly into the decision of the Plan Commission and Village Board (as opposed to the testimony from the School District Defendants and others serving as the evidentiary basis for the decision). Because the Plaintiff paints the School District Defendants' actions as "collaboration" with the Plan Commission and Village Board (and other defendants),

3025896.1

Plaintiff surmises that its claimed injury is equally attributable to all defendants, bringing the actions of each within the alleged violations of the Fair Housing Act. The theory of liability that Plaintiff has advanced to salvage its Complaint from dismissal is circular, speculative and overlooks the broader factual record reflected in the Complaint and documents incorporated therein. Plaintiff's argument fails to override the immunity afforded the School District Defendants' activity under the First Amendment, to confer standing or to state a viable claim for violation of the Fair Housing Act or to state a claim for substantive relief otherwise. As such, the Complaint against the School District Defendants must be dismissed.

I. **The Allegations Do Not Support Application of the "Sham Litigation" Exception.**

The Complaint against the School District Defendants must be dismissed based on the School District Defendants' constitutional right to engage in litigation, lobbying, and speech. *New West, L.P. v. City of Joliet*, 491 F.3d 717, 722 (7th Cir. 2007); *Tri–Corp Housing Incorporated v. Bauman*, 826 F.3d 446 (7th Cir. 2016). Plaintiff initially seeks to depict the School District Defendants' actions as outside the scope of the *Noerr-Pennington* doctrine, because the actions were orchestrated and concerted as if those were exceptions to the doctrine. (Response at 5). Plaintiff does not provide any authority that would alter application of the *Noerr-Pennington* doctrine whether the School District Defendants' speech was independent or concerted. The fundamental conduct that Plaintiff challenges is the School District Defendants' participation in a Plan Commission hearing, and that conduct is unquestionably protected by the First Amendment.

Plaintiff also seeks to deflect application of the *Noerr-Pennington* doctrine by depicting the School District Defendants' conduct as dissemination of false information through a letter to

families and press release. Those documents, attached to the Complaint as exhibits and incorporated into the allegations, *Williamson v. Curran,* 714 F.3d 432, 435 (7th Cir. 2013), summarize the testimony the School District Defendants presented at the Plan Commission hearing.[1] As much as Plaintiff tries to repackage the School District Defendants' conduct, the crux of the Complaint remains that Plaintiffs are claiming to be injured as a result of the position the School District Defendants took in the Plan Commission hearing, and that is a position the School District Defendants have a legally-protected right to take.

Plaintiff cannot rely on the "sham litigation" exception to the *Noerr-Pennington* doctrine because the School District Defendants have not initiated litigation or any other action against Plaintiff. The sham litigation exception necessarily involves such initiation of action by a governmental entity that opens the door to claims that the litigation has only been brought for the sole purpose of inflicting injury, with no expectation of securing a favorable result. *Compare New West, L.P.*, 491 F.3d at 722 (remanding for consideration of doctrine in light of condemnation proceedings brought by City) *with Tri-Corp Housing Inc. v. Bauman*, 826 F. 3d at 450 (reciting exemption to doctrine as making the other litigant bear the costs of mounting a defense even though the suit by the governmental body has no chance of success). The Complaint here seeks to impose damages based on the School District Defendants' response to a legal process initiated by Plaintiff. Plaintiff has not offered any authority where the "sham litigation" exception has applied to the circumstances here, where a governmental entity only participates in a hearing responding to a zoning application.

---

[1] Although omitted as an Exhibit to the Complaint, the actual testimony is referenced in Exhibits T and U as being posted to the District's website, where it remains available for public access and review.

Instead, Plaintiff merely argues that the "sham litigation" exception applies because it claims a discriminatory intent by the School District Defendants. Initially, opposing a development application is different from discrimination. *Sheikh v. Rabin*, No. 11-CV-425, 2012 WL 5471085, at *5 (N.D. Ill. Nov. 9, 2012), *aff'd,* 565 F. App'x 512 (7th Cir. 2014). Plaintiff's reliance on *Tizes v. Curcio*, an unpublished district court opinion that pre-dates the Seventh Circuit's application of the *Noerr-Pennington* doctrine in the context of Fair Housing Act cases, to contend that allegations of discriminatory motive strips First Amendment protection is not viable. *Tizes* is procedurally distinct for three key reasons: 1) the court examined the *Noerr-Pennington* doctrine in the context of 42 U.S.C. §§ 1981 and 1982 and related authority, not just the Fair Housing Act; 2) the governmental entity ***pursued litigation*** and appeals against the plaintiff with no real expectation of securing a favorable result, thus engaging in "petitioning" activity not to induce government action but to injure the plaintiff directly; and 3) the *Tizes* complaint alleged specific and repeated ethnic and religious slurs, leveling of physical threats, attempted extortion, destruction of property and the erection of a locked gate on the plaintiff's property, conduct which is not present in this case. Here, even crediting Plaintiff's hyperbolic claim of an orchestrated opposition to the development application, the purpose and end result of the School District Defendants' challenged activity was still to induce government action. Such participation in a zoning application process squarely falls under the petitioning activity covered by the First Amendment. *See generally Mercatus Group, LLC v. Lake Forest Hosp.*, 641 F.3d 834 (7th Cir. 2011).

As to Plaintiff's conclusory contention that the School District Defendants' opposed the development application out of discriminatory intent, even if such a consideration fell within the "sham litigation" analysis, nothing in the Complaint supports any inference of discriminatory

4

3025896.1

animus by the School District Defendants. The testimony that serves as the basis for the allegations of discriminatory animus addresses the economic impact of the Haymarket facility on the School District and the potential safety implications. The School Defendants have presented similar information in response to other proposed developments. *See Exhibits T, U*. Presenting information about District finances and expressing concerns about the impact of a development on the operation of schools is hardly characteristic of actions "borne of discrimination," and Plaintiff's only assertions to the contrary are generic, conclusory ones. To the contrary, presenting information about the impact of development on School District finances and safety *is* consistent with lobbying for a specific outcome, which the First Amendment fully permits.

Even non-binding authority from outside this district that Plaintiff cites for support does not dictate a different outcome. The critical point for which Plaintiff cites *Gilead Community Services, Inc. v. Town of Cromwell*, pertained to the speech and statements of **decisionmakers** involved in a zoning hearing, not efforts by one governmental entity to petition another for a specific outcome, as is the case with the School District Defendants. 432 F. Supp. 3d 46, 75 (D. Conn. 2019) (recognizing that doctrine would only apply to Town's petition to Connecticut Department of Public Health to deny plaintiff a license as a basis for liability, not to liability of town and zoning officials for their statements related to their zoning decision). Quite simply, the School District Defendants' participation in the Plan Commission proceedings is petitioning activity that is squarely protected by the First Amendment. For that reason alone, Plaintiff cannot impose liability against the School District Defendants for their opposition to the development application, and the Complaint against the School District Defendants must be dismissed in its entirety. *Tri-Corp Housing, Inc.*, 826 F.3d 446.

### II. Plaintiff Has not Established Standing to Sue the School District Defendants for Violations of the Fair Housing Act or Americans with Disabilities Act.

Plaintiff's response to the lack of standing to bring a claim against the School District Defendants mirrors its arguments in response to the First Amendment coverage: Plaintiff attempts to circumvent the applicable legal standard merely by arguing a "concerted" or "orchestrated" campaign. Plaintiff's alleged injury in fact is a discriminatory denial of zoning. (Response at 7). The School District Defendants did not make any zoning determination; there is no standing to sue the School District Defendants for this injury. Plaintiff's efforts to justify standing to sue the School District Defendants independently only reinforce the grounds for dismissing this Complaint based on the *Noerr-Pennington* doctrine.

Plaintiff states, without any factual allegations or reasonable support, that the School District Defendants' opposition during the hearing and their communications about the testimony separately factored into the decision by the Plan Commission, thus conferring standing against the School District Defendants. Again, this argument that the testimony at the hearing served as the basis for the Plan Commission's denial of Plaintiff's application squarely confirms application of the *Noerr-Pennington* doctrine to bar liability. Second, the referenced communications are attached to the Complaint as Exhibits T and U. Those communications summarize the testimony that was to be given the same day to the Plan Commission. It is utterly illogical to argue that these communications about testimony, rather than simply the testimony itself, "factored explicitly into the decision by the Plan Commission, and then the Village Board, to deny Haymarket's application." (Response at 7). Given the content of the communications, Plaintiff cannot reasonably claim that conduct by the School District Defendants outside of the hearing caused the denial of the application. Additionally, even if this Court credited Plaintiff's

6

argument that it has standing to sue the School District Defendants based on external communication, this also serves to reinforce application of the *Noerr-Pennington* doctrine to bar liability. A letter-writing campaign to influence a zoning board is still considered "petitioning" activity protected by the First Amendment. *Mercatus Group, LLC*, 641 F.3d at 849-850.

Finally, a finding that the School District Defendants violated the Fair Housing Act or the Americans with Disabilities Act does not mean that the Plan Commission or Village Board will approve the Plaintiff's application. The injury Plaintiff claims is a denial of zoning; the relief it seeks rests solely with the Plan Commission and Village Board. There is no claim against the School District Defendants.

On the issue of standing, Plaintiff again turns to unpublished opinions that are factually and procedurally distinct to support their contention that they have standing. *See e.g.*, *HOPE v. Eden Management, LLC (HOPE II)*, 2016 WL 40111225 (N.D. Ill. 2016) ("HOPE II"). While the amended complaint that was analyzed in HOPE II did support standing against the State, the entire legal framework relied on by those plaintiffs to support their standing argument is inapplicable here. Specifically, the HOPE II amended compliant contained allegations to impute actions by a private entity as State action for purposes of conferring liability on a State actor. The essence of the conduct complained of in this case is far more attenuated than what was alleged in HOPE II and more analogous to HOPE I, *H.O.P.E., Inc. v. Eden Mgmt. LLC*, 128 F. Supp. 3d 1066 (N.D. Ill. 2015), relied on by the School District Defendants. The School District Defendants have not imposed rules, requirements, policies or taken other action that could impact access to available housing; they communicated information to another governmental entity, and it was entirely within the other entity's discretion whether and how to consider such communications. Plaintiff has cited no authority holding that one local governmental entity who

7

participates in a zoning hearing at the discretion of the local governmental officials of another governmental body, who are presumed to act impartially, causes injury alleged to have stemmed from the decision of those local officials.

The claim for standing against the School District Defendants under the ADA is equally as attenuated. In fact, Plaintiff fails to cite any authority to support its argument that it has standing to pursue a violation of the ADA against the School District Defendants for the decision of the Plan Commission and Village Board—separate governmental entities. Plaintiffs include a footnote referencing a number of cases suggesting that there could be joint liability under the ADA between public and private actors engaged in joint endeavors. In those cases, though, the "program, services or activities" are a shared responsibility. Here, the only "program, service or activity" at issue is that of the Village of Itasca, administered solely by the Village of Itasca—namely, approval of a zoning application. The injury alleged does not arise out of Plaintiff's attempt to participate programs offered by the School District Defendants.

Additionally, the Court cannot base standing for claims against the School District Defendants on Haymarket's *voluntary* withdrawal of the Mother and Child Program. *Accord Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 518 (7th Cir. 2010) (self-inflicted injury resulting from plaintiff's decision was not traceable to defendant's alleged unlawful conduct); *see also Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004)( "The only way to know how matters will turn out is to let the process run its course."); *Graehling v. Vill. of Lombard, Ill.*, 58 F.3d 295, 298 (7th Cir. 1995) (one who elects between lawful alternatives cannot later cry "coercion."). Fundamentally, a voluntary withdrawal of a program from consideration by the Plan Commission does not constitute an injury that is fairly traceable to any party other than Plaintiff. The withdrawal is not alleged to be anything other than voluntary, so

8

the allegations certainly do not support an argument that the withdrawal is really attributable to the actions of another party. Certainly, Plaintiff could have persisted in seeking approval of the Mother and Child Program regardless of the School District Defendants' position. The law simply does not provide redress for self-imposed decisions. The Plaintiff's decision not to fight for the outcome it desired does not equate to a legal violation by the School District Defendants. There is a complete absence of standing to enforce the ADA against the School District Defendants here.

### III. Plaintiff Has Not Stated a Claim to Relief for Substantive Violations of the FHA.

Plaintiff's attempts to resuscitate substantive claims for violations of the Fair Housing Act are equally as futile. Plaintiff equates the alleged "influence" the School District Defendants exerted over the zoning decision as "effectuating" the denial of the zoning application Section 3604(f). The School District Defendants have no legal authority to effectuate such action and the Plaintiffs do not allege that they do. Their participation in a legal process does not fall within the scope of Section 3604(f). *Steptoe v. Beverly Area Plan. Ass'n*, 674 F. Supp. 1313, 1320 (N.D. Ill. 1987); *Michigan Protection and Advocacy Service, Inc. v. Babin*, 799 F.Supp. 695 (E.D. Mich. 1992); *see also Sheikh v. Rabin,* 2012 WL 5471085, at *5 (N.D. Ill. Nov. 9, 2012).

Further, Plaintiff cites no authority that educational service are the sorts of governmental services that fall within the scope of Section 3604(b). Plaintiff contends that the School District Defendants were unwilling to provide educational services to Haymarket. (Response at 13). This argument is unsupported by any allegations in the Complaint. To the contrary, the testimony presented acknowledged the eligibility of children of patients at Haymarket to attend Itasca District 10 schools. *Exhibits T, U.* The School District Defendants may have expressed concerns about the costs of providing such services, but nothing about such expression conveyed

9

a withholding of "educational services"—to the extent a school district could even withhold such services to eligible children under the legal framework establishing compulsory education in this State.

Again, Plaintiff seeks to impose liability against the School District Defendants under 3604(b) based on Plaintiff's own decision to voluntarily withdraw the Mother and Child Program.  Essentially, Plaintiff contends that really the School District Defendants caused the withdrawal of the program out of discrimination.  Plaintiff's claim for liability under 3604(b) would still require some allegation that the School District Defendants have withheld governmental services that are covered by the Fair Housing Act.  Those allegations are completely absent from the Complaint.

Plaintiff's claimed justification for a violation of Section 3604(c) is equally tenuous. The School District Defendants are not covered by this section, which applies to entities involved in housing transactions, i.e., the sale or rental of a dwelling.  Even if they could be, the Complaint fails to allege a statement made, printed or published by the School District Defendants that indicates a preference with respect to the sale or rental of a dwelling.  *Michigan Protection and Advocacy Service*, 799 F.Supp. at 716.  Plaintiff only alleges that the School District Defendants made "many discriminatory statements … evidenc[ing] an unwillingness to educate Haymarket students due to disability and familial status." (Response at 14).  By its plain language, these statements do not indicate a preference with respect to the sale or rental of a dwelling as required to state a claim.

Plaintiff is equally unsuccessful in expanding the scope of Section 3617 to encompass the claims arising out of the denial of a zoning hearing.  Again, offensive comments and angry finger waving at a Zoning Board meeting—the sort of alleged conduct at issue here—are not actions

that would rise to the level of conduct that would support a claim under Section 3617. *Chicago Title & Land Tr. Co. v. Rabin*, No. 11-CV-425, 2012 WL 266387, at *3 (N.D. Ill. Jan. 30, 2012). Plaintiff's only contentions to the contrary are: 1) generic, conclusory statements of "discrimination," and 2) the implausible claim that stating approval of the Haymarket development would burden the school district was a threat.

In short, Plaintiff's attempts to articulate some theory of substantive violations of the Fair Housing Act only expose the barriers to recovery in this case based on the *Noerr-Pennington* doctrine and the lack of standing against the School District Defendants. the School District Defendants' expression of a position on Haymarket DuPage's development application is protected activity in its own right. It is not activity that has discriminated against Haymarket DuPage directly or by association with adults with disabilities or due to familial status. Plaintiff's attempts to hold the School District Defendants liable in this case for the decision of the Plan Commission and Village Board is simply too speculative and attenuated to support either standing for such claims or a claim for substantive relief under the FHA or ADA.

### IV. The Claims against Superintendent Benes Must be Dismissed.

Finally, Plaintiff's reliance on state actor cases under Section 1983 to claim that the suit against Superintendent Benes is not redundant of the claims against the School District is wholly inapplicable. The authority cited by Plaintiff is distinguishable because this Complaint does not contain a Section 1983 claim, and the sovereign immunity considerations involved in suing a State in Plaintiff's cited cases are not present with the School Defendants. For purposes of this proceeding, Superintendent Benes and the School District are the same legal entity. The claims against Superintendent Benes are redundant and must be dismissed. *Kiser v. Naperville Cmty. Unit*, 227 F. Supp. 2d 954, 961 (N.D. Ill. 2002).

## CONCLUSION

WHEREFORE, for the reasons discussed above, the School District Defendants respectfully request that the Court grant their Motion to Dismiss pursuant to Fed R. Civ. P. 12(b)(1) and (6) and dismiss all claims asserted against them.

                                                      Respectfully submitted,
                                                      ITASCA PUBLIC SCHOOL DISTRICT 10
                                                      and SUPERINTENDENT CRAIG BENES

                                                      By: /s/ Abigail C. Rogers
                                                            One of Defendants' Attorneys

Dated: May 20, 2022

Abigail C. Rogers (ARDC #: 6243760)
Luis A. Rodriguez (ARDC #: 6243753)
ENGLER CALLAWAY BAASTEN & SRAGA, LLC
2215 York Road, Suite 400
Oak Brook, IL 60523
Telephone: (630) 313-4750
arogers@ecbslaw.com
lrodriguez@ecbslaw.com

Jennifer A. Smith (jas@franczek.com)
Caroline Kane (ckk@franczek.com)
Franczek P.C.
300 S. Wacker Drive, Suite 3400
Chicago, Illinois 60606
312-986-0300