# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HAYMARKET DUPAGE LLC, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) Civil Action No. 22-CV-160 ) Judge Steven C. Seeger |
| VILLAGE OF ITASCA, et al. | ) Magistrate Judge Beth W. Jantz ) |
| *Defendants*. | ) ) |

## AMICUS BRIEF OF FIFTEEN STATES IN SUPPORT OF DEFENDANTS' OPPOSITION TO THE UNITED STATES' MOTION TO INTERVENE

Among other claims, Plaintiff alleges that Defendants violated Title II of the Americans with Disabilities Act ("ADA"). *See* Am. Compl. ¶¶ 228-34, Dkt. 81. The Department of Justice ("DOJ") seeks to intervene to support Plaintiff's Title II claim under two alternative theories. First, DOJ argues it should be *permitted* to intervene because this case involves claims "based on" a statute it "administer[s]." *See* DOJ Reply 2-4 (citing Fed. R. Civ. P. 24(b)(2)), Dkt. 113-1. Second, DOJ argues that it is *entitled* to intervene because of general "core interests regarding the ADA and its implementing regulations." Mot. to Intervene ¶ 4, Dkt. 94. But both theories are undercut by Congress's decision to deny DOJ authority to enforce Title II.[1] *See Planned Parenthood of Wisc., Inc. v. Kaul*, 942 F.3d 793, 804 (7th Cir. 2019) (explaining permissive intervention is a matter of district court discretion that can include consideration of the elements of intervention as of right). At bottom, DOJ seeks to end-run Congress's intent in the ADA that only individuals may enforce Title II and to secure broad authority to intervene in federal-question litigation. This Court should deny DOJ's request to intervene.

---

[1] The States focus this amicus brief on DOJ's lack of enforcement authority under Title II and do not address the separate question of whether DOJ has Article III standing to enforce civil laws, like Title II, that withhold enforcement authority from the federal government. *See* DOJ Reply 9.

**ARGUMENT**

**I.  DOJ is not authorized to initiate enforcement actions under Title II.**

"Like substantive federal law itself," the right "to enforce federal law must be created by Congress." *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Courts therefore must interpret the relevant statute to determine whether Congress intended to create a particular "remedy," because when "a cause of action does not exist[,] … courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286-87. And the ADA is clear: The Attorney General lacks authority to enforce Title II.

**A. The ADA's plain text does not grant DOJ a cause of action under Title II.**

Title II only provides a cause of action to "*person[s]* alleging discrimination on the basis of disability." 42 U.S.C. § 12133 (emphasis added). Thus, in answering whether the Attorney General has a cause of action, the word "person" is "precisely where this case should begin and end," *United States v. Florida*, 938 F.3d 1221, 1253 (11th Cir. 2019) (Branch, J., dissenting), because "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others," *Alexander*, 532 U.S. at 290. The ADA does not define "person" in Title II, but there is a "longstanding interpretive presumption that 'person' does not include the sovereign." *Return Mail, Inc. v. U.S. Postal Serv.*, 587 U.S. 618, 626 (2019) (citation omitted). In other words, "person" means what it says: individuals. Thus, the ADA's plain text "excludes a federal agency" like DOJ from suing under Title II because a "federal agency" is not a "person." *See id.* at 626-28.[2]

Basic interpretive principles support that "longstanding interpretative presumption" here. *Id.* at 626 (citation omitted). For one, limiting "person" in Title II to individuals reflects "common

---

[2] The federal government's own regulations similarly do not contemplate authority for federal agencies to sue under Title II. *See, e.g.*, 28 C.F.R. § 35.172(c) (permitting agencies to issue "Letters of Findings"); *id.* at § 35.172(d) (recognizing "the *complainant['s]*" authority to "file a private suit") (emphasis added). Regardless, authority to bring enforcement actions must be found in a statute—not regulations. *Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993).

usage"—after all, a federal agency cannot have a "disability"[3] that might serve as a "basis" for discrimination. *Id.* at 627. For two, the Federal Government is "[n]otably absent from the list of 'person[s]'" in the Dictionary Act—which supplies the definition of "person" that courts should use in "determining the meaning of any Act of Congress, unless the context indicates otherwise." *Id.* (citation omitted).

### B. Context confirms that DOJ lacks a cause of action under Title II.

The presumption that the Federal Government is not a "person" can be overcome only if there is "some indication in text or context of the statute that affirmatively shows Congress intended to include the Government." *Id.* at 628-29. But the ADA's larger context only confirms that the Attorney General lacks authority to enforce Title II. Just compare Title II's enforcement provision with the enforcement provisions in Titles I and III of the ADA.

Congress knows how to give the Attorney General a cause of action, and when it does so, it is *explicit*. *See, e.g.*, 52 U.S.C. § 10101(c) (authorizing "the Attorney General" to enforce the Voting Rights Act). The ADA is a case in point. "Title I's enforcement provision … expressly authorizes the Attorney General to sue, and does so *separately* from 'any person alleging discrimination.'" *United States v. Sec'y Fla. Agency for Health Care Admin.*, 21 F.4th 730, 749 (11th Cir. 2021) ("*FAHCA*") (Newsom, J., dissenting from denial of rehearing en banc) (citing 42 U.S.C. § 12117(a)). "Title III's enforcement provision … is structured a bit differently, but it too clearly vests the Attorney General with authority to sue" separately from any person who is being subject to discrimination on the basis of disability. *Id.* at 749-50 (citing 42 U.S.C. § 12188).

Congress's decision to expressly authorize the Attorney General to enforce Titles I and III "tells us (at least) two things about the way Congress drafted the ADA." *Id.* at 750. *First*, under the canon against superfluity, "the Attorney General is not included within the term 'person' under Titles

---

[3] *See* 42 U.S.C. § 12102(1) (defining "disability" "with respect to an individual" and to encompass "a physical or mental impairment that substantially limits one or more major life activit[y]").

3

I and III," otherwise there would be no reason to include the two terms alongside each other. *Id.* (citing *Republic of Sudan v. Harrison*, 587 U.S. 1, 12 (2019)). "*Second*, Title I and III show that when Congress intended the Attorney General to have enforcement power under the ADA, *it said so.*" *Id.*

Applying these lessons to Title II's enforcement provision confirms that the Attorney General is not covered. If the term "person" does not include the Attorney General in Titles I or III, then it does not include the Attorney General in Title II, either. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995) (explaining "the 'normal rule of statutory construction' that identical words used in different parts of the same act are intended to have the same meaning") (citation omitted). And "silence" regarding a federal agency's enforcement authority "is significant when laid beside other provisions of law" that explicitly authorize agency action. *See FAHCA*, 21 F.4th at 750 (Newsom, J., dissenting from denial of rehearing en banc) (quoting *Dir., Off. of Workers' Comp. Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 129-30 (1995)). Title II's failure to mention the Attorney General is even more telling since it resides in the same statute as Titles I and III. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted).

The difference between the text of Title II and Titles I and III has not been lost on the Supreme Court. In *Olmstead v. L.C. ex rel. Zimring*, the Court observed that "[t]he ADA contains several … provisions allocating … enforcement responsibility." 527 U.S. 581, 591 n.5 (1999). For example, agency regulations implementing Title II limited enforcement to "a person alleging discrimination on the basis of disability," while "the Attorney General[] *and* persons alleging discrimination" may enforce Titles I and III. *Id.* (emphasis added). And in at least four other instances, the Court has addressed the private right of action under Title II without so much as hinting that a federal enforcement action might exist. *See Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 161-62 (2017); *United States v. Georgia*, 546 U.S.

4

151, 154 (2006); *Tennessee v. Lane*, 541 U.S. 509, 517 (2004); *Barnes v. Gorman*, 536 U.S. 181, 184-85 (2002).

In arguing that the Attorney General has authority to enforce Title II, DOJ does not wrestle with the enforcement provision's text conferring a cause of action only on "person[s]. *See* Reply 9-13. DOJ does not cite, let alone distinguish, *Return Mail*. *Id.* Nor are DOJ's attempts (at 14-15) to explain away Congress's distinct language in Title II compared to Title I and III convincing, because "[n]o matter how 'complex' the 'remedies, procedures, and rights' provided for in Title II may be, they apply only to a 'person alleging discrimination.'" *FAHCA*, 21 F.4th at 751 (Newsom, J., dissenting from denial of rehearing en banc). And because basic interpretative tools clearly establish that a "person alleging discrimination" does not include the Attorney General, DOJ's retreat to legislative history, DOJ Reply 13-14, is unavailing. *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 808 n.3 (1989) ("Legislative history is irrelevant to the interpretation of an unambiguous statute."). Thus, DOJ lacks authority to enforce Title II.

**II.     The Eleventh Circuit's contrary holding in *Florida* is unpersuasive.**

In *Florida*, a divided panel of the Eleventh Circuit concluded that the Attorney General has authority to enforce Title II notwithstanding the ADA's plain statutory language based on a "cascade of cross-references." *See* 938 F.3d at 1229. Glossing past *Return Mail*'s "presumption that 'person' does not include the sovereign," 587 U.S. at 626, the panel majority noted that the "remedies, procedures, and rights" available under Title II are the same "remedies, procedures, and rights set forth" in § 505 of the Rehabilitation Act, which in turn references Title VI of the Civil Rights Act of 1964. *Id.* at 1227 (quoting 42 U.S.C. § 12133); *id.* n.5. According to the majority, because Title II's "remedies, procedures, and rights" language "adopts federal statutes" and regulations that contemplate enforcement and suit by the Attorney General, the Attorney General can likewise sue under Title II. *Id.* at 1238, 1250. And DOJ advances those same arguments here. *See* DOJ Reply 10-12. But when you

5

chase the *Florida* panel's waterfalls, you find no statutory enforcement authority.

**1.** For starters, the rights and remedies available under Title II are a distinct matter from who has authority to enforce them, and Title II only provides "remedies, procedures, and rights" to "*person[s]* alleging discrimination on the basis of disability." 42 U.S.C. § 12133 (emphasis added). DOJ responds that by incorporating the "'remedies, procedures, and rights' set forth in Title VI and the Rehabilitation Act" Congress "granted persons alleging discrimination under Title II a bundle of remedies and rights," including federal enforcement of the ADA. *See* DOJ Reply 12-13. But DOJ does not (and could not) explain how granting a cause of action to the federal government is a "right" "provided to" a "person alleging discrimination."

A "right" is generally understood as "[s]omething that is due to a person" or "[a] legally enforceable claim that another will or will not do a given act." *Right*, Black's Law Dictionary (12th ed. 2024). Allowing the Attorney General a cause of action under Title II, however, does not create a "legally enforceable claim" in a person alleging disability discrimination, nor does empowering the Attorney General to separately enforce Title II mean such enforcement is "due to" such a person. Indeed, granting private citizens any such "right" would "run up against the Executive's Article II authority to enforce federal law" by making Title II suits a matter of aggrieved persons' "right" rather than executive discretion. *See United States v. Texas*, 599 U.S. 670, 678 (2023). Thus, DOJ essentially reads Title II to say "[t]he [potential for the Attorney General to bring suit] shall be the [potential for the Attorney General to bring suit] this subchapter provides to any person alleging discrimination on the basis of disability." Such a reading renders a clause intended to "provide" a remedy or right to a "person" meaningless, because the person has no ability to effectuate that "potential."

Nor is federal enforcement itself a "remedy" "provided to" a "person alleging discrimination." A "remedy" typically refers to a form of "legal redress" by which one "enforce[s] a right." "Remedy," *Random House Dictionary of the English Language* (2d. ed. 1987); "Remedy," *Webster's Ninth*

*New Collegiate Dictionary* (1985) (defining "remedy" as "the legal means to recover a right"). But no one obtains legal redress for disability discrimination simply by knowing that DOJ *might* choose to sue the State that inflicted the alleged harm. A "remedy" means something like "compensatory damages and injunctive relief"—not a cause of action for DOJ. *See Doherty v. Bice*, 101 F.4th 169, 174 (2d Cir. 2024) (describing the sort of remedies that are appropriate in in Title VI actions). That is exactly how the term is used in Title VII, where "appropriate remedies" include "reinstatement or hiring of employees with or without back pay." 42 U.S.C. § 2000e-16(b).

A "wider look at" the "structure" of the cross-referenced statutes confirms that Title II does not sub silentio smuggle in federal enforcement authority. *Van Buren v. United States*, 593 U.S. 374, 389 (2021) (citation omitted). Both the Rehabilitation Act and Title VI set forth remedies, procedures, and rights for aggrieved persons *and* DOJ. *See, e.g.*, 42 U.S.C. 2000e-5(f)(1) (granting enforcement authority to the Attorney General *and* "the person aggrieved"). Given Title II's focus on the "person alleging discrimination on the basis for disability," it makes sense for Congress to provide the "remedies, procedures, and rights" provided to the aggrieved persons in the cross-referenced statutes. 42 U.S.C. § 12133. But it makes no sense, in a statute providing rights and remedies to aggrieved "person[s]," to pull through separate statutory authorizations of federal enforcement. *Id.*

**2.** And even if the federal enforcement provisions of the Rehabilitation Act and Title VI were applicable, they are not blank checks. *See FAHCA*, 21 F.4th at 751-55 (Newsom, J., dissenting from denial of rehearing en banc). Relevant here, Title VI's remedial provision allows enforcement by "any other means authorized by law," 42 U.S.C. § 2000d–1, so "[t]he controlling question … is whether the Attorney General's suit … to enforce Title II constitutes an 'other means *authorized by law*.'" *Id.* at 753 (emphasis added). In other words, "in the absence of the statute," does "*something else* … sanction the proposed 'means'"? *Id.* The answer is no, because DOJ cannot point "to a common-law or statutory cause of action 'authoriz[ing]' the federal government to sue for a violation of Title II." *Id.*

7

The *Florida* panel reached the opposite conclusion by analogizing to "cases in which courts have affirmed the federal government's common-law cause of action to sue under Title VI and the Rehabilitation Act … for breach of contract." *Id.* But "the analogy doesn't hold up." *Id.* The "widely recognized cause of action" to enforce contract-like Spending Clause legislation "comes from the common law of contracts," and "it authorizes suit only for—and upon—a breach of contract." *Id.* at 754. Of course, the ADA is not Spending Clause legislation, so "the government has no cause of action in this case based in contract-law principles." *Id.* Thus, all the case law that the *Florida* panel relied on to shoehorn federal enforcement into Title II "identifies and concerns a cause of action that has no application under the circumstances of this case." *Id.* at 755. This Court should thus decline to follow the *Florida* panel's reading of Title II's enforcement provision.

**3.** Nor are the other cases DOJ relies on (at 13) persuasive. For instance, the district court in *United States v. Mississippi*, No. 3:16-cv-622, 2019 WL 2092569, at *2 (S.D. Miss. May 13, 2019), simply block-quoted the conclusion of *United States v. Harris County*, No. 4:16-cv-2331, 2017 WL 7692396, at *1 (S.D. Tex. Apr. 26, 2017). *Harris County*, for its part, relied on a string of citations to other district court decisions and a single paragraph that concluded that because DOJ could sue to enforce other statutes, it therefore must be able to sue to enforce Title II. 2017 WL 7692396, at *1. The district court in *United States v. Virginia* also focused on tracing the cascade of remedies in the cross-references while failing to engage at all with the plain text that provides those remedies only to a "person alleging discrimination." No. 3:12-cv-59, 2012 WL 13034148, at *2-3 (E.D. Va. June 5, 2012). Likewise, the district court in *Smith v. City of Philadelphia* gave short shrift to the text, skipping over the language about "person[s]" to conclude that Title II simply "incorporate[s]" the remedies of the Civil Rights Act. 345 F. Supp. 2d 482, 490 (E.D. Pa. 2004). And the district court in *United States v. City & County of Denver* only addressed whether DOJ "ha[d] complied with the procedural requirements of the regulations implementing Title II of the ADA" and whether Title II "extinguish[ed] the right of the United

8

States to file an independent action upon a suit being filed by a private party." 927 F. Supp. 1396, 1400 (D. Col. 1996).

**III.     Granting DOJ a cause of action under Title II disrupts the State-Federal balance.**

"[O]ur Constitution establishes a system of dual sovereignty between the States and the Federal Government." *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). Although "[t]he actual scope of the Federal Government's authority with respect to the States has changed over the years," *New York v. United States*, 505 U.S. 144, 159 (1992), the "separation of the two spheres" remains "one of the Constitution's structural protections of liberty," *Printz v. United States*, 521 U.S. 898, 921 (1997). Even Title II suits brought by *individuals* carry "federalism costs inherent in referring state decisions regarding the administration of … programs and the allocation of resources to the reviewing authority of the federal courts." *Olmstead*, 527 U.S. at 610 (Kennedy, J., concurring). So, granting *the Attorney General* power to sue state governments is a particularly "big deal." *FAHCA*, 21 F.4th at 757 (Newsom, J., dissenting from denial of rehearing en banc).

Here, because some actions carry heavier federalism costs than others, "there are 'good reasons' … why Congress might have wanted the Attorney General to be able to sue under Titles I and III, but not Title II." *Id.* at 751. While "Titles I and III apply predominantly to private defendants—employers and providers of public accommodations, respectively—Title II regulates every service, program, and activity administered by every state in the country." *Id.* That means "Title II enforcement could bring the federal and state governments into broad-scale conflict in a way that suits under Titles I and II would not." *Id.* Indeed, granting the Attorney General oversight of broad swaths of States' governance and operations "tilt[s] the federal balance decisively in favor of the federal government." *Id.* at 758.

History bears this out. To settle a Title II case brought by DOJ, "Georgia agreed to numerous substantive policy changes governing how it would serve those with developmental disabilities and

9

mental illness." *Id.* at 757-58 (citation omitted). "Georgia also agreed to allow an independent reviewer to determine—at state expense—its compliance with the settlement." *Id.* at 758 (citation omitted). "Additionally, the agreement gave the United States 'full access' to any persons, records, or materials 'necessary to assess the State's compliance.'" *Id.* (citation omitted). Thus, "sanctioning the Attorney General's enforcement of Title II," could force public entities to choose between costly settlement agreements that also lead to federal oversight of local policy decisions and the risk of "thousands (possibly millions) of dollars in litigation costs by disputing liability or terms of compliance." *Id.*

And DOJ's expansive understanding of Title II's scope means the agency could extract policy changes across all facets of States' operations. Just consider DOJ's recent Title II action against the State of Tennessee, arguing that state criminal law violates the ADA. *See* Dkt. 1, *United States v. Tennessee*, No. 2:24-cv-2101 (W.D. Tenn). According to DOJ, Tennessee's aggravated prostitution statute—which provides heightened penalties for individuals who commit prostitution while knowingly HIV-positive—"unlawfully discriminate[s] against individuals with … a disability." *Id.* ¶ 2. In addition to seeking compensatory damages on behalf of individuals convicted under Tennessee's law, DOJ seeks a federal-court order rewriting state criminal law and compelling state officials to amend state criminal records. And DOJ has used Title II as a cudgel to affect zoning policy in the past. *See United States v. City of Baltimore*, 845 F. Supp. 2d 640, 643-46 (D. Md. 2012).

This is not to say that Congress can *never* "regulate states in seemingly local matters (or even provide for federal enforcement, through lawsuits or otherwise)." *FAHCA*, 21 F.4th at 758 (Newsom, J., dissenting from denial of rehearing en banc). But "federal legislation threatening to trench on the States' arrangements for conducting their own governments should be treated with great skepticism, and read in a way that preserves a State's chosen disposition of its own power." *Nixon v. Missouri Mun. League*, 541 U.S. 125, 140 (2004). So before allowing the federal government to regulate States

in local matters ranging from zoning to medical care to criminal law enforcement Congress "must make its intention to [alter the usual constitutional balance] unmistakably clear in the language of the statute." *Gregory*, 501 U.S. 458. After all, "although the federal government holds the upper hand, the wielding of its federal power against the states cannot be taken lightly or casually inferred." *FAHCA*, 21 F.4th at 758 (Newsom, J., dissenting from denial of rehearing en banc). Indeed, the fact that "States do not retain sovereign immunity from suits brought by the federal government," *Florida*, 938 F.3d at 1250, is one reason why Congress must be clear when it creates a cause of action for the federal government. But "reading Title II's enforcement provisions to allow the Attorney General" a cause of action against States and thereby authority to regulate their "provision of services to [their] residents" would "sanction DOJ's encroachment on [States'] sovereign prerogatives—*in the absence of any solid evidence that Congress intended such a result*." *FAHCA*, 21 F.4th at 758 (Newsom, J., dissenting from denial of rehearing en banc).

## CONCLUSION

This Court should conclude that DOJ lacks authority to enforce Title II and deny the agency's request to intervene.

Respectfully submitted,

*/s/ Adam K. Mortara*
ADAM K. MORTARA
Lawfair LLC
40 Burton Hills Blvd. Suite 200
Nashville, TN 37215
(773) 750-7154
Mortara@lawfairllc.com

*Counsel for the State Amici*

JONATHAN SKRMETTI
Tennessee Attorney General
& Reporter

HARRISON GRAY KILGORE
Strategic Litigation Counsel &
Assistant Solicitor General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-3491
harrison.kilgore@ag.tn.gov

**OTHER STATES REPRESENTED**

| | |
|---|---|
| **STEVE MARSHALL**<br>Alabama Attorney General | **TIM GRIFFIN**<br>Arkansas Attorney General |
| **CHRISTOPHER M. CARR**<br>Georgia Attorney General | **THEODORE E. ROKITA**<br>Indiana Attorney General |
| **BRENNA BIRD**<br>Iowa Attorney General | **LIZ MURRILL**<br>Louisiana Attorney General |
| **LYNN FITCH**<br>Mississippi Attorney General | **AUSTIN KNUDSEN**<br>Montana Attorney General |
| **MICHAEL T. HILGERS**<br>Nebraska Attorney General | **DREW H. WRIGLEY**<br>North Dakota Attorney General |
| **ALAN WILSON**<br>South Carolina Attorney General | **MARTY J. JACKLEY**<br>South Dakota Attorney General |
| **KEN PAXTON**<br>Texas Attorney General | **SEAN REYES**<br>Utah Attorney General |